# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

TARRENCE THOMPSON,

   Plaintiff,

  v.

WEXFORD HEALTH SOURCES, INC.,
JONATHAN EK, KIMBERLY LARSON,
and DOE DEFENDANTS #1–3, in their
individual and official capacities,

   Defendants.

Civil Action No. 21-cv-02251

Judge Michael M. Mihm

Magistrate Judge Jonathan E. Hawley

**Oral argument requested.**

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS WEXFORD HEALTH SOURCES, INC. AND JONATHAN EK'S
<u>MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.     THE COURT SHOULD DENY THE WEXFORD DEFENDANTS' MOTION TO
DISMISS. ......................................................................................................... 2

    A.    Legal Standard. .................................................................................... 2

    B.    The Complaint States A Claim Against The Wexford Defendants For
Negligent Hiring And Retention (Count VI). ......................................... 2

    C.    The Complaint States A Claim Against The Wexford Defendants For
Willful and Wanton Failure to Supervise (Count IX). .......................... 14

II.    THE COURT SHOULD DENY THE WEXFORD DEFENDANTS MOTION TO
STRIKE, WHICH ATTACKS ALLEGATIONS CENTRAL TO MR.
THOMPSON'S CLAIMS. ................................................................................ 18

    A.    Legal Standard. .................................................................................. 18

    B.    Regardless Of Whether Allegations Of Dr. Ek's Alleged Past Misconduct
Are Unflattering, They Cannot Be Stricken Under Rule 12(f). ............... 19

CONCLUSION ........................................................................................................... 20

i

## **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Arnett v. Webster*,
   658 F.3d 742 (7th Cir. 2011) ....................................................................................2

*Baumrucker v. Express Cab Dispatch, Inc.*,
   84 N.E.3d 482 (Ill. App. 1st Dist. 2017)................................................................15

*Becken v. Manpower, Inc.*,
   532 F.2d 56 (7th Cir. 1976) ......................................................................................8

*Bryant v. Livigni*,
   619 N.E.2d 550 (Ill. App. 5th Dist. 1993) ..............................................................15

*Chicago Transit Auth. v. Amalgamated Transit Union, Loc. 241*,
   926 N.E.2d 919 (Ill. App. 1st Dist. 2010)..............................................................11

*Crecy v. Kankakee Sch. Dist. #111*,
   15-CV-1014, 2016 WL 10789394 (C.D. Ill. June 20, 2016) ..................................15

*Doe 20 v. Bd. of Educ. of Community Unit School District No. 5*,
   680 F. Supp. 2d 957 (C.D. Ill. 2010) (Mihm, J.) ............................................5, 6, 8

*Doe v. Bd. of Educ. of City of Chicago*,
   No. 19 C 00263, 2020 WL 1445638 (N.D. Ill. Mar. 24, 2020) ..............................17

*Doe v. Coe*,
   135 N.E.3d 1 (Ill. 2019) ...................................................................................4, 8, 11

*Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*,
   133 F.3d 1054 (7th Cir. 1998) ................................................................................19

*Easley v. Apollo Detective Agency, Inc.*,
   387 N.E.2d 1241 (Ill. App. 1st Dist. 1979)...........................................................8, 9

*Ehlerding v. Am. Mattress & Upholstery, Inc.*,
   208 F.Supp.3d 944 (N.D. Ind. 2016) ......................................................................20

*Elliott v. Williams*,
   807 N.E.2d 506 (Ill. App. 1st Dist. 2004).................................................................5

*Fed. Nat. Mortg. Ass'n v. Cobb*,
   738 F. Supp. 1220 (N.D. Ind. 1990) .......................................................................20

*Giraldi by Giraldi v. Community Consol. Sch. Dist. No. 62*,
    665 N.E.2d 332 (Ill. App. 1st Dist. 1996)...............................................................11

*Gress v. Lakhani Hospitality, Inc.*,
    110 N.E.3d 251 (Ill. App. 1st Dist. 2018)..............................................................12

*Hosea v. Slaughter*,
    669 F. App'x 791 (7th Cir. 2016) .............................................................................2

*Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cty.*,
    804 F.3d 826 (7th Cir. 2015) .....................................................................................2

*Lee v. Eddystone Fire & Ambul.*,
    CV 19-3295, 2019 WL 6038535 (E.D. Pa. Nov. 13, 2019)....................................18

*Malorney v. B & L Motor Freight, Inc.*,
    496 N.E.2d 1086 (Ill. App. 1st Dist. 1986)............................................................11

*McDowell v. Morgan Stanley & Co., Inc.*,
    645 F. Supp. 2d 690 (N.D. Ill. 2009) .....................................................................18

*Montgomery v. Petty Mgt. Corp.*,
    752 N.E.2d 596 (Ill. App. 1st Dist. 2001)..............................................................12

*Mueller by Math v. Community Consol. Sch. Dist. 54*,
    678 N.E.2d 660 (Ill. App. 1st Dist. 1997)................................................................9

*Navarete v. Naperville Psychiatric Ventures*,
    No. 2-10-0614, 2011 WL 10453417 (Ill. App. 2d Dist., Dec. 16, 2011)..................8

*Olson v. Champaign Cty., Ill.*,
    784 F.3d 1093 (7th Cir. 2015) ...................................................................................2

*Doe ex rel. Ortega-Piron v. Chicago Bd. of Educ.*,
    820 N.E.2d 418 (Ill. 2004) ...............................................................................16, 17

*Doe ex rel. Ortega-Prion v. Chicago Bd. of Educ.*,
    791 N.E.2d 1283 (Ill. App. 1st Dist. 2003)............................................................11

*Schmall v. Kohl's Dept. Store, Inc.*,
    17 C 06747, 2018 WL 488271 (N.D. Ill. Jan. 19, 2018) .......................................16

*Siegel v. HSBC Holdings*,
    283 F. Supp. 3d 722 (N.D. Ill. 2017) .....................................................................20

*Sterling v. Bd. of Educ. of Evanston Township High Sch. Dist.*
    202, No. 19-CV-05599, 2021 WL 809763 (N.D. Ill. Mar. 3, 2021) .......................16

*Strickland v. Commun. and Cable of Chicago, Inc.*,
    710 N.E.2d 55 (Ill. App. 1st Dist. 1999)................................................................11

*Vakharia v. Little Co. of Mary Hosp. & Health Care Centers*,
    2 F. Supp. 2d 1028 (N.D. Ill. 1998) ..................................................................18

*Van Horne v. Muller*,
    705 N.E.2d 898 (Ill. 1998) .......................................................................4, 12, 13

*Volling v. Antioch Rescue Squad*,
    999 F. Supp. 2d 991 (N.D. Ill. 2013) ............................................................18, 19

*Ziarko v. Soo Line R. Co.*,
    641 N.E.2d 402 (Ill. 1994).................................................................................14

**Statutes**

42 U.S.C. § 1983...................................................................................................20

**Other Authorities**

American Medical Association, *Code of Medical Ethics Opinion 9.1.1*: *Romantic
    or Sexual Relationships with Patients* (accessed March 1, 2022 9:43 p.m.),
    https://www.ama-assn.org/delivering-care/ethics/romantic-or-sexual-
    relationships-patients ..................................................................................10

Randy Ellis, *Oklahoma Board of Medical Licensure and Supervision delays
    decision on Perry doctor's license*, The Oklahoman (July 24, 2009, 12:00
    AM)...........................................................................................................11

Fed. R. Civ. Proc. 12(b)(6) ..................................................................................20

Fed. R. Civ. Proc. Rule 12(f) ........................................................................18, 19, 20

Plaintiff Tarrence Thompson ("Mr. Thompson"), submits this memorandum of law opposing the motion to strike and partial motion to dismiss Mr. Thompson's Amended Complaint (ECF No. 20; the "Motion") brought by Defendants Wexford Health Sources, Inc. ("Wexford") and Dr. Jonathan Ek ("Dr. Ek"; collectively with Wexford, the "Wexford Defendants"). (ECF Nos. 23 and 24.)

## INTRODUCTION

Mr. Thompson's Amended Complaint alleges specific facts showing that Dr. Ek's history as a physician was marked by an inability or unwillingness to abide by fundamental professional standards of care. He pleads that Wexford would have known those facts had they bothered to type Dr. Ek's name into a search engine. Mr. Thompson pleads that after Wexford hired Dr. Ek, they put him in an institutional setting that would allow his dangerous shortcomings as a physician to go unchecked. Mr. Thompson alleges, further, that Dr. Ek's unfitness manifested in this setting, predictably. Over a protracted period, Dr. Ek's pattern of severe lapses in judgment and indifference to patient welfare allowed Mr. Thompson's eminently recognizable – and treatable – diabetes to go untreated. It nearly killed him. All the while, Wexford never intervened and apparently never bothered to monitor Dr. Ek's performance.

These facts state claims for negligent hiring and retention and willful and wanton failure to supervise under Illinois law. The Wexford Defendant's arguments to the contrary, along with their motion to strike, rely upon a desperate attempt to sweep Dr. Ek's past under the rug. They make unsupported factual assertions that Dr. Ek's past misconduct was strictly a product of his addiction, that he has – this time – conquered his demons once and for all, and that accordingly *none* of that misconduct speaks to his fitness as a physician at Danville. To support these arguments, the Wexford Defendants arguments have gathered a hodgepodge of inapposite cases and cases that, more often than not, support Mr. Thompson.

1

Mr. Thompson, therefore, respectfully requests that the Court deny the Wexford Defendants' partial motion to dismiss and motion to strike.

## ARGUMENT

## I.  THE COURT SHOULD DENY THE WEXFORD DEFENDANTS' MOTION TO DISMISS.

### A.  Legal Standard.

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Hosea v. Slaughter*, 669 F. App'x 791, 792 (7th Cir. 2016) (quoting *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). A complaint need only contain a short and plain statement of the claim showing that the plaintiff is entitled to relief to survive a motion to dismiss. *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1098 (7th Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). The complaint must give the defendant fair notice of what the claim is and the grounds it rests upon. *Id.* at 1098–99 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plaintiff's responsibility is to state a claim for relief that is plausible on its face. *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cty.*, 804 F.3d 826, 832–33 (7th Cir. 2015) (citing *Twombly*, 550 U.S. at 570 *and Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard calls only for enough facts to raise the reasonable expectation that discovery will reveal evidence supporting the allegations. *Id.* On a motion to dismiss, the Court takes all well-pleaded allegations of the complaint as true and views them in the light most favorable to the plaintiff. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (citing *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010)).

### B.  The Complaint States A Claim Against The Wexford Defendants For Negligent Hiring And Retention (Count VI).

Plaintiff Thompson alleges that prior to his employment by Wexford, Dr. Ek exhibited a striking pattern of violating fundamental professional standards that seriously endangered, if not directly harmed, the patients in his care. (ECF No. 20 ¶¶ 24–27.) Specifically, Dr. Ek abused a

2

shockingly broad array of drugs, violated the most basic boundaries in the doctor-patient relationship by having oral sex with a female patient in his office, and stole pain medication from his patient for his own illegal use. (*Id.*) Recognizing the obvious threat that Dr. Ek's practice posed to his patents, the Oklahoma State Board of Medical Licensure and Supervision suspended Dr. Ek's license. (*Id.* at 24.) Mr. Thompson further alleges that, within a year of being provisionally reinstated, Dr. Ek was back before the Board, surrendering his license after stealing medication from a patient, abusing it himself, overdosing, and then testing positive for multiple drugs. (*Id.* ¶ 26.) He had once again demonstrated a shocking disregard for his fundamental duty to his patients in his new position at a home for veterans, an institutional setting. (*Id.* ¶ 25.)

Mr. Thompson alleges that when Wexford hired Dr. Ek, all this misconduct could have been discovered through a simple Google search.[1] (*Id.* ¶ 27.) The Amended Complaint also alleges that, because of Dr. Ek's demonstrated inability or unwillingness to abide by basic professional standards of care, he was particularly unfit for the position of medical director at a correctional facility – another institutional setting, and an environment in which he was left unsupervised to manage the healthcare of incarcerated patients who had limited ability to address any mistreatment. (*Id.* ¶ 112.)

The Amended Complaint also pleads facts demonstrating that Dr. Ek's pattern of violating fundamental professional standards arose again in his mistreatment of Mr. Thompson. Dr. Ek flouted basic protocols for diagnosing and treating Mr. Thompson, allowing his treatable diabetes to go unchecked until Mr. Thompson's blood sugar caused acute ketoacidosis. (*Id.* ¶¶ 28–52.) The Amended Complaint alleges that Dr. Ek became angry and frustrated when Mr. Thompson raised concerns about his frightening symptoms and subsequently discharged Mr. Thompson without

---

[1] Which is how Plaintiff uncovered these issues.

undertaking basic precautions to safeguard Mr. Thompson's health. (*Id.* ¶¶ 32–41.) Mr. Thompson further alleges Dr. Ek's pattern of disregarding his fundamental duty to protect his patients' health continued all the way to the point when Mr. Thompson became unresponsive, cold to the touch, and at the edge of a diabetic coma that could have been fatal at any minute – yet Dr. Ek ordered Mr. Thompson to be transported in a state vehicle, rather than an ambulance. (*Id.* ¶¶ 48–51 and Ex. A at 5.) The serious and potentially life-long injuries Mr. Thompson suffered were the predictable results of Dr. Ek's mistreatment. (*Id.* ¶¶ 53–61.)

The Wexford Defendants move to dismiss Mr. Thompson's negligent hiring and retention claim on one basis only. They assert that there is simply "no connection" between the egregiously substandard medical treatment Mr. Thompson alleges he received and Dr. Ek's established record of professional misconduct as alleged in the Amended Complaint; accordingly, they argue, Mr. Thompson has failed to plead that Dr. Ek's unfitness was the proximate cause of his injuries. (ECF No. 24 at 5.) But this assertion is simply wrong under Illinois law – and is undermined by the authority cited in the Wexford Defendant's Motion.

Under Illinois law, an employer is liable for negligent hiring or retention if a plaintiff is injured by an employee who was unfit for his position, and the employer knew or should have known that hiring or retaining the employee would create a danger of harm to third parties because of his particular unfitness for the position. *Doe v. Coe*, 135 N.E.3d 1, 13–14 (Ill. 2019). There must be a "sufficient nexus" between the employee's unfitness and a plaintiff's injury, such that the injury was "foreseeable to a person of ordinary prudence in the employer's position." *Van Horne v. Muller*, 705 N.E.2d 898, 905–6 (Ill. 1998). In negligent hiring cases, "[p]roximate cause is ordinarily a question for the jury to decide. . . . [and] can become a question of law only when the facts are not only undisputed but are also such that there can be no difference in the judgment of

reasonable men as to the inferences to be drawn from them." *Elliott v. Williams*, 807 N.E.2d 506, 510 (Ill. App. 1st Dist. 2004) (internal citations omitted). Illinois law does not require pleading that an employee's particular unfitness must have been apparent at the time of hiring because of past conduct that mirrors, or even closely resembles, the conduct that caused the plaintiff's injuries. *See, e.g., Doe 20 v. Bd. of Educ. of Community Unit School District No. 5*, 680 F. Supp. 2d 957, 988 (C.D. Ill. 2010) (Mihm, J.) (allegations of teacher's past resisting arrest and domestic violence sufficient to state claim by students sexually abused by teacher).

As pled, the Amended Complaint alleges a clear nexus between Dr. Ek's particular unfitness and Mr. Thompson's injuries, well beyond what is required to state a claim under Illinois law. Facts pleaded therein allege that Dr. Ek was prone to severe lapses in judgment that violated fundamental professional standards and jeopardized his patients' health and safety. First, the Amended Complaint alleges specific instances that would have indicated Dr. Ek's willingness to endanger, and even directly harm, vulnerable patients through his conduct while discharging his duties as a physician. Mr. Thompson alleges, specifically, that Dr. Ek had oral sex with a female patient in his medical offices (a vulnerable patient whom he had been providing large amounts of painkillers and anti-anxiety medication), destroying any basis for an appropriate physician-patient relationship and thus willfully compromising his ability to provide effective medical care. (*Id*. ¶ 24.) Indeed, drawing reasonable inferences in favor of Mr. Thompson, Dr. Ek's abuse of his authority as a medical professional in relation to a patient in his examination room may have caused immediate harm to the patient's health and emotional well-being.

Mr. Thompson also alleges that the Oklahoma State Board of Medical Licensure and Supervision suspended Dr. Ek's license after finding Dr. Ek abused more than 20 kinds of prescription and street drugs and lied on his application for admission as a physician in Oklahoma.

(*Id.* ¶ 24.) It logically follows – drawing all reasonable inferences in favor of Mr. Thompson, as is required on a motion to dismiss – that Dr. Ek chose to continue treating patients while seriously impaired by his substance abuse, and only stopped endangering his patients once he was forced to do so through the Oklahoma Board's suspension of his license. (*Id.*)

Moreover, Mr. Thompson alleges another incident of misconduct, after Dr. Ek's suspension, with aspects that are similar to his egregious mistreatment of Mr. Thompson. As a doctor at an Oklahoma Department of Veterans Affairs facility – an institutional position Dr. Ek took after he assured the licensing board that he had put his substance abuse problems in the past – Dr. Ek deprived a patient of prescribed medication by stealing the patient's morphine for his own illicit use. (*Id.* ¶ 25.)

The Amended Complaint, further, alleges facts demonstrating that Mr. Thompson was injured when Dr. Ek's pattern of violating professional standards in his dealings with patients manifested yet again in his treatment of Mr. Thompson. Despite Mr. Thompson's textbook symptoms of acute diabetes– and indeed despite Dr. Ek's own recognition that Mr. Thompson was potentially diabetic and in critical need of care – Dr. Ek discharged him from the infirmary without ordering any medication, nor even ordering the administration of a blood sugar test on-hand at Danville. (*Id.* ¶¶ 31–40 and Ex. A at 2) Even after Dr. Ek received "critical" lab results from the University of Illinois-Chicago showing that Mr. Thompson had blood sugar levels putting him at imminent risk of diabetic coma, he did not bother to bring Mr. Thompson in for an examination. Instead, he merely prescribed Metformin, a contraindicated drug that was "ineffective and dangerous" given Mr. Thompson's condition. (*Id.* ¶¶ 42–44 and Ex. A at 4–5.)

Dr. Ek continued to withhold the medication that would have treated Mr. Thompson's condition – intravenous insulin – long beyond the point it was clearly necessary. (*Id.* ¶¶ 30–49 and

Ex. A at 5). Finally, when Mr. Thompson was almost at the point of a diabetic coma, Dr. Ek prescribed a very low dosage of insulin "akin to throwing a cup of water on a raging house fire," but still neglected to undertake "basic protocols taught in medical school and post-graduate training that Dr. Ek must have appreciated." (*Id.*, Ex. A at 5.) Even after Mr. Thompson collapsed in his cell, when it was immediately recognizable that he was "unstable and could suffer a cardiovascular collapse requiring EMT resuscitation at any minute," Dr. Ek ordered Mr. Thompson to be transported by state vehicle, rather than in an ambulance. (*Id.* ¶¶ 47–51 and Ex. A at 5.)

The Amended Complaint also alleges that all of the above egregious failures to adhere to basic standards of care were motivated at least in part out of Dr. Ek's personal frustration with Mr. Thompson raising concerns about his health. (*Id.* ¶ 32.) This, too, echoes the Amended Complaint's allegations of Dr. Ek's history of misconduct: specifically, the instances in which Dr. Ek put his own personal feelings and motivations above his patient's well-being and care. (*Id.* ¶¶ 24–25.)

That Mr. Thompson has established the requisite nexus between Dr. Ek's unfitness and Mr. Thompson's injuries is further supported by three additional considerations.

*First*, Dr. Ek's past conduct demonstrating both his unfitness for the medical director position and the foreseeability of injuries such as Mr. Thompson's all occurred, critically, during the discharge of his duties as a physician. Thus, the nexus between the unfitness Mr. Thompson alleges and the injury he suffered is closer than numerous cases in which the employee's alleged unfitness was based upon red flags raised completely beyond the scope of employment duties. In *Community Unit Sch. Dist. No. 5*, for example, students who had been sexually abused by a teacher stated a claim where the teacher's unfitness was based upon a past conviction for resisting arrest,

an incident of physical abuse of his girlfriend, and his misrepresentation of his criminal record. 680 F. Supp. 2d at 988 (reasoning that, even where it is "hard to see" how past misconduct could make plaintiff's injury foreseeable, "this determination would be premature" on a motion to dismiss); *see also*, *e.g.*, *Navarete v. Naperville Psychiatric Ventures*, No. 2-10-0614, 2011 WL 10453417, at *12–13 (Ill. App. 2d Dist., Dec. 16, 2011) (reversing summary judgment in claim brought by plaintiff who was sexually abused by mental health counselor; counselor's unfitness was evidenced by his prior conviction for selling drugs); *Becken v. Manpower, Inc.*, 532 F.2d 56, 57 (7th Cir. 1976) (reversing summary judgment because movers who stole inventory from plaintiff's jewelry store had recently been convicted for unspecified offenses).

*Second*, as a physician, Dr. Ek was in a position in which he was entrusted with protecting the welfare of third parties such as Mr. Thompson — his patients. Where the allegedly unfit employee's duties involve looking after the safety or welfare of third parties, courts construe the particular unfitness and causation elements broadly: in such cases, facts supporting the employee's "moral turpitude" or a general history of unethical conduct satisfy the standard. *See Community Unit Sch. Dist. No. 5*, 680 F. Supp. 2d at 987–88 (teacher); *Navarete*, 2011 WL 10453417, at *12 (mental health counselor in an institutional setting); *Coe*, 135 N.E.3d at 13–14 (pastor). In *Easley v. Apollo Detective Agency, Inc.*, 387 N.E.2d 1241 (Ill. App. 1st Dist. 1979), for example, a plaintiff who was raped by her apartment building's security guard sufficiently alleged negligent hiring based on evidence that the guard had been arrested twice for unspecified offenses, *id.* at 1247 and had during previous employment fallen asleep on the job, been the subject of a complaint for "making eyes" at a female employee, and asked to borrow money from the vice president of a store to which he was assigned. *Id* at 1249. The court's ruling relied in part on the facts that the employee was an armed, uniformed security guard with a passkey to residents' apartments. *Id*.

8

*Third*, Dr. Ek's unfitness was even more pronounced in the context of his position as the medical director and sole doctor at Danville, where he was responsible for treating a population of patients who could not choose a different healthcare provider if they were mistreated by him. The foreseeability that Dr. Ek's unfitness might harm patients under his care at Danville was further exacerbated by the fact that he was largely unsupervised on a day-to-day basis. *See Mueller by Math v. Community Consol. Sch. Dist. 54*, 678 N.E.2d 660, 664 (Ill. App. 1st Dist. 1997) ("[I]t is the perils and hazards likely to be encountered" by a third party within the scope of the employee's duties "against which the defendant ha[s] a duty to protect.").

In Mr. Thompson's case, the effect of this lack of supervision was perhaps clearest when, after Mr. Thompson had been found in his cell unresponsive and cold to the touch – with a blood sugar level that presented a critical threat of death or permanent disability – Dr. Ek called for Mr. Thompson to be transported in a state transport vehicle rather than an ambulance. (ECF No. 20 ¶¶ 47–51 and Ex. A at 5.) There was no one with supervisory authority to overrule Dr. Ek's decision. If a nurse, Dr. Ek's subordinate, had not objected to Dr. Ek's order, the consequences may have been fatal. (*Id.* ¶¶ 49, 51 and Ex. A at 5.) Further, because of his position of authority as medical director and the only doctor at Danville, inmates would risk potential retaliation from Dr. Ek if they complained about Dr. Ek's treatment. And indeed, as Mr. Thompson alleges, he refrained from raising any complaint about Dr. Ek's mistreatment out of fear that Dr. Ek might retaliate by discharging him from the infirmary and otherwise withholding necessary medical care. (*Id.* ¶¶ 38–39.) It was, as the Alleged Complaint makes clear, an unfortunately well-founded fear.

The arguments raised by the Wexford Defendants are unavailing. The crux of their Motion appears to be the claim that the Amended Complaint "includes nothing suggesting Dr. Ek had a history of clinical errors or substandard medical treatment that Wexford knew or should have

9

known about." (ECF No. 24 at 5.) Putting aside that the law, as already illustrated, does not require Mr. Thompson to plead that any of Dr. Ek's past misconduct demonstrated a history of clinical errors or substandard medical treatment with the specificity demanded by the Wexford Defendants, the Wexford Defendants' statement is conclusory. It does not acknowledge that stealing a patient's medication constitutes substandard medical treatment. It does not acknowledge that a sexual relationship with a patient violates the central tenets of medical ethics.[2] Nor do the Wexford Defendants explain how Dr. Ek's abuse of more than 20 different prescription and street drugs while providing care to patients would not severely impair his clinical judgment nor lead him to provide substandard care. (*See* ECF 20 at ¶ 24.) Certainly, the suspension of Dr. Ek's license in 2009, as well as the subsequent complaint that led to Dr. Ek surrendering his license in 2010, show the grave concerns that the Oklahoma licensing board had that Dr. Ek's continued practice posed a threat to his patients. (*See id.* ¶¶ 24–25.) Yet the Wexford Defendants simply brush these allegations aside.

Instead, the Motion makes the unsupported factual assertion that Mr. Thompson's allegations of past misconduct are "stale." (ECF No. 24 at 5.) Such misconduct, the Wexford Defendants argue, was entirely the product of an "old history of addiction" which they proclaim Dr. Ek has vanquished.[3] (*Id.* at 7.) The Wexford Defendants have not provided even so much as

---

[2] *See* American Medical Association, *Code of Medical Ethics Opinion 9.1.1: Romantic or Sexual Relationships with Patients* (accessed March 1, 2022 9:43 p.m.), https://www.ama-assn.org/delivering-care/ethics/romantic-or-sexual-relationships-patients ("Romantic or sexual interactions between physicians and patients that occur concurrently with the patient physician relationship are unethical. Such interactions detract from the goals of the patient-physician relationship and may exploit the vulnerability of the patient, compromise the physician's ability to make objective judgments about the patient's health care, and ultimately be detrimental to the patient's well-being.")

[3] Dr. Ek's license was reinstated on a probationary basis after he assured the Oklahoma Board that he had overcome the addiction that was the reason for his misbehavior. Randy Ellis, *Oklahoma Board of Medical Licensure and Supervision delays decision on Perry doctor's license*, The Oklahoman (July 24, 2009, 12:00 AM), https://www.oklahoman.com/article/3387602/oklahoma-board-of-medical-licensure-and-supervision-delays-decision-on-perry-doctors-license.

Dr. Ek's own declaration to support his purported recovery from addiction, but more importantly, the federal rules prohibit any such fact-based arguments in a motion to dismiss. Similarly, the Wexford Defendants rely on the issuance of Dr. Ek's probationary license to practice medicine in Illinois as evidence of his recovery and his fitness to act as a physician generally. (*Id.* at 7.) But Dr. Ek lied to a medical licensing board before, (EFC No. 20 ¶ 24), and the facts surrounding his application to practice in Illinois are currently unknown. If anything, the inclusion of such factual arguments in the Wexford Defendants' motion to dismiss only signifies the degree to which Mr. Thompson has adequately stated a claim that demands further factual development through discovery.

Ultimately, the shakiness of the legal grounds for the Wexford Defendants' motion is reflected in the case law they cite. All of the cases in the Motion, with only two exceptions, either rule *for the plaintiff* or address proceedings beyond the pleading stage, when facts had been developed through discovery. *Coe,* 135 N.E. 3d at 14 (affirming appellate court's denial of motion to dismiss); *Doe ex rel. Ortega-Prion v. Chicago Bd. of Educ.*, 791 N.E.2d 1283, 1285 (Ill. App. 1st Dist. 2003), (reversing dismissal of willful and wanton misconduct claim); *Malorney v. B & L Motor Freight, Inc.*, 496 N.E.2d 1086, 1089 (Ill. App. 1st Dist. 1986) (affirming denial of defendant's summary judgment motion); *Chicago Transit Auth. v. Amalgamated Transit Union, Loc. 241*, 926 N.E.2d 919, 929 (Ill. App. 1st Dist. 2010) (in case evaluating arbitrator's reinstatement of union employee, court reasoned that past misconduct alleged could establish negligent hiring); *Giraldi by Giraldi v. Community Consol. Sch. Dist. No. 62*, 665 N.E.2d 332, 340 (Ill. App. 1st Dist. 1996) (affirming trial court's directed verdict); *Strickland v. Commun. and*

---

He further reported to the Board that he would be taking a job at a Veterans Affairs hospital, an institutional facility in which he would be closely supervised. *Id.*

11

*Cable of Chicago, Inc*., 710 N.E.2d 55, 57 (Ill. App. 1st Dist. 1999) (affirming summary judgment)[4]; *Montgomery v. Petty Mgt. Corp*., 752 N.E.2d 596, 597 (Ill. App. 1st Dist. 2001) (same).

The two cases cited that grant motions to dismiss are readily distinguishable.

In *Gress v. Lakhani Hospitality, Inc.*, 110 N.E.3d 251, 267, 424 (Ill. App. 1st Dist. 2018), the court held that the plaintiffs failed to plead a sufficient nexus between a hotel handyman's solitary arrest for solicitation of prostitution and his rape of a hotel guest in her room. While the *Gress* plaintiffs' fourth amended complaint included prior instances of untoward or threatening behavior by the handyman, they failed to allege the employer knew or should have known that history – an element that the Wexford Defendants' Motion sensibly does not contest in this case. *Id.* at 268.

The only other case evaluating the adequacy of a complaint, *Van Hoerne v. Muller*, 705 N.E.2d 898 (Ill. 1998), is also inapposite. Most obviously, in *Van Hoerne,* the nature of the alleged injury (defamation) and the employee's position (radio broadcaster) demanded a strict reading of the pleading standard – a clear step in the opposite direction from the broader view taken by courts in cases involving employees such as Dr. Ek who are entrusted with the care of others. *Id.* at 906–07. The *Van Hoerne* court explicitly adopted a "narrow interpretation" of the cause of action's requirements "[b]ecause of the [F]irst [A]mendment concerns which arise when liability is predicated on speech." *Id.* The *Van Hoerne* court recognized this was a deviation from other types of negligent hiring cases. *Id.* at 907 (explaining that "Plaintiff's theory would . . . hold a media employer liable for its decision to hire or retain a broadcaster simply because that broadcaster was a controversial figure, . . . [which] would have an inevitable chilling effect on free speech.").

---

[4] There appears to have been some confusion regarding the cite to *Strickland*, as the parenthetical in the Wexford Defendants' motion includes facts and language from *Giraldi*, *supra*.

Regardless of the *Van Hoerne* court's narrow interpretation, the case is distinguishable due to the gulf between the type of harm to be expected from the broadcaster's past misconduct and the harm to be expected from the conduct that injured the plaintiff. The plaintiff in *Van Horne* alleged that the conduct of the broadcaster, Mark "Mancow" Muller, constituted defamation, a specific intentional tort defined primarily by the type of injury inflicted: harm to an individual's reputation. *Id.* at 901. But the conduct alleged to establish the well-known "shock jock" broadcaster's particular unfitness consisted entirely of indiscriminately "outrageous and offensive" antics. *Id.* at 904. None of Muller's alleged past misconduct posed a threat of harm to anyone's reputation; in fact, apart from one alleged instance of schoolyard name-calling between the broadcaster and a local television host, none of his conduct was directed at any particular individual at all. *Id.* By comparison, the Amended Complaint alleges that prior to his employment by Wexford, Dr. Ek repeatedly violated basic professional standards and norms in the discharge of his duties as a physician, from which it can be readily inferred that Dr. Ek provided substandard medical care likely to cause serious harm (ECF No. 20 ¶¶ 24–27); that Wexford should have known Dr. Ek would likely again abuse his authority as a medical professional, particularly in an institutional setting (*id.*); that Dr. Ek again violated basic professional standards and norms in his treatment of Mr. Thompson (*id.* ¶¶ 28–52); and that Mr. Thompson suffered the type of mental and physical harms to be expected in a patient who receives egregiously substandard medical care, just like it may reasonably be inferred the victims of Dr. Ek's prior misconduct suffered. (*Id.* ¶¶ 53–61.)

**C.     The Complaint States A Claim Against The Wexford Defendants For Willful and Wanton Failure to Supervise (Count IX).**

Mr. Thompson has pleaded facts establishing that the Wexford Defendants' failure to supervise its employees, including and especially Dr. Ek, rose beyond the level of simple negligence to willful and wanton misconduct. The Amended Complaint includes allegations making clear that Wexford knew or should have known the serious risk Dr. Ek's administration of care posed to his patients at Danville, yet still failed to exercise any discernible supervision over his egregiously poor treatment of Mr. Thompson. Indeed, Mr. Thompson alleges that Wexford "*knew or should have known* that its policies, procedures, and practices for selecting, staffing, and supervising its employees likely would result in delayed or substandard care," even though the law does not require knowledge of the risk of harm. (ECF No. 20 ¶ 108; emphasis added.) *See Ziarko v. Soo Line R. Co.*, 641 N.E.2d 402, 406 (Ill. 1994) (it suffices to allege facts indicating "failure to discover the danger through carelessness when it could have been discovered by the exercise of ordinary care") (internal citations and quotation marks omitted).

Having struggled, apparently, to find relevant case law in support of their motion to dismiss Count IX, the Wexford Defendants rely upon conclusory arguments and avoid engaging with the facts pleaded in Mr. Thompson's complaint. In so doing, they only underscore the fact that the facts alleged in the Amended Complaint surpass what is required under Illinois law, particularly at the pleading stage.

In Illinois, "conduct characterized as willful and wanton may be proven where the acts have been less than intentional – *i.e.*, where there has been a failure, after knowledge of impending danger, to exercise ordinary care to prevent the danger, or a failure to discover the danger through carelessness when it could have been discovered by the exercise of ordinary care." *Ziarko* 641 N.E.2d at 406 (Ill. 1994) (internal citations and quotation marks omitted). The Illinois Supreme

14

Court has noted that there is no clear-cut distinction between ordinary negligence and willful and wanton misconduct, and indeed "there is a thin line between simple negligence and willful and wanton acts[.]" *Id.* (internal citations and quotation marks omitted). The precise location of that line "depends on each case's facts and ordinarily presents a question of fact for the jury to determine." *Baumrucker v. Express Cab Dispatch, Inc.*, 84 N.E.3d 482, 494 (Ill. App. 1st Dist. 2017); *see Bryant v. Livigni*, 619 N.E.2d 550, 558 (Ill. App. 5th Dist. 1993) (A plaintiff is free to "plead in alternative counts that certain conduct constitutes either negligence or willful and wanton misconduct," at which point "the question then becomes one for the jury to determine whether the conduct . . . rose to the level of willful and wanton misconduct.") (citations omitted).

Mr. Thompson has alleged facts, first, that Wexford knew or should have known that the failure to closely monitor Dr. Ek's conduct and clinical judgments would create a clear and obvious danger to his patients. As detailed in Section I above, the Amended Complaint pleads that Dr. Ek had a long history of failing to abide by fundamental professional standards, and that the Wexford Defendants either ignored that history or failed to undertake a background check of any kind. (ECF No. 20 ¶¶ 24–27.) This exceeds the standard: Illinois courts have found that willful and wanton conduct may be sufficiently pleaded even in the absence of any past conduct indicating a heightened need for supervision. *See Crecy v. Kankakee Sch. Dist. #111*, 15-CV-1014, 2016 WL 10789394, at *16–17 (C.D. Ill. June 20, 2016) (denying motion to dismiss claim that school district willfully and wantonly failed to supervise, despite no allegations of any conduct indicating that employee created a risk of harm to students).

Second, the Amended Complaint alleges that, rather than provide careful supervision to mitigate the risk of harm Dr. Ek's hiring entailed, the Wexford Defendants did precisely the opposite. Specifically, Mr. Thompson alleges that, in order to gain financial incentives, Wexford

staffed Danville with a skeleton crew of medical personnel to provide care for more than 1,500 inmates even though it was "impossible to provide adequate medical services to so many individuals with such a depleted staff." (*Id*. ¶ 22) In other words, Wexford placed an unfit doctor into a role in which even a highly competent doctor would be unable to provide adequate care, and still failed to adequately supervise his conduct.

Third, Mr. Thompson alleges facts that Dr. Ek's egregiously deficient course of treatment extended over several weeks. (ECF No. 20 ¶¶ 30–52 and Ex. A at 2 ("Dr. Ek also noted in addendum 'A1C 12.1[,]' indicating that Mr. Thompson's blood sugar had been abnormally elevated for many weeks, such that he would have felt ill for some time prior to December 29, 2020.")) The Wexford Defendants, that is, failed to meaningfully supervise Dr. Ek's treatment during an extended time – yet a failure to supervise on only one occasion is sufficient to plead willful and wanton misconduct. *See Doe ex rel. Ortega-Piron v. Chicago Bd. of Educ*., 820 N.E.2d 418, 420, 424 (Ill. 2004) (affirming reversal of motion to dismiss, where plaintiff was assaulted on the single day a school bus monitor called in sick). Further, while Mr. Thompson pleads the Wexford Defendants knew or should have known of Dr. Ek's past misconduct, and knew their staffing at Danville was inadequate, under Illinois law merely an extended course of misconduct, standing alone, is sufficient for willful and wanton failure to supervise. *See Sterling v. Bd. of Educ. of Evanston Township High Sch. Dist*. 202, No. 19-CV-05599, 2021 WL 809763, at *5, 8 (N.D. Ill. Mar. 3, 2021) (finding allegations of extended period of misconduct and that defendant was aware of the need to supervise staff and report misconduct to be sufficient, despite absence of "any facts to suggest that [employees] had some known history of sexual misconduct").

Once again, the Wexford Defendants cite to holdings that are either irrelevant or favorable to Mr. Thompson to buttress their conclusory arguments. First, the Motion cites to *Schmall v.*

*Kohl's Dept. Store, Inc.*, 17 C 06747, 2018 WL 488271, at *2 (N.D. Ill. Jan. 19, 2018), a slip-and-fall case in which the plaintiffs failed to allege *any* facts to suggest knowledge of or indifference to the allegedly dangerous condition, an "uneven, raised" sidewalk. Second, as noted above, in *Doe ex rel. Ortega-Piron*, the Illinois Supreme Court found allegations of a single lapse in supervision sufficient to state a claim, a distinction favoring Mr. Thompson's claim, which alleges Wexford failed to supervise Dr. Ek's treatment of Mr. Thompson for multiple weeks. 820 N.E.2d at 420, 424. Finally, in *Doe v. Bd. of Educ. of City of Chicago*, No. 19 C 00263, 2020 WL 1445638, at *15 (N.D. Ill. Mar. 24, 2020), the court found the following allegations to be "more than enough information to notify the [defendant school board] of the specific conduct the Plaintiffs are alleging was willful and wanton":

> [T]hat the Board . . . failed to (1) prevent and report the improper touching; (2) "reasonably direct, instruct, supervise, monitor, and train its agents ... to ensure timely and proper reporting of sexual abuse"; (3) "be aware of the care and treatment needed for each student"; and (4) "adequately conduct reference checks, background checks, or employment screenings of agents...."

Mr. Thompson has alleged that Wexford (1) failed to prevent his mistreatment by Dr. Ek (ECF No. 20 ¶ 124); (2) maintains policies and practices "that do not require adequate oversight in connection with its hiring, supervision, and retention of medical staff" and that cause "the diffusion of responsibility across care providers and administrators such that no one acts of feels ultimately responsible or accountable for any patient's health, and indeed employs staffing levels wholly inadequate to provide adequate medical care (*Id.* ¶¶ 18, 22–24); (3) failed to monitor the obvious treatment Mr. Thompson needed, which Dr. Ek completely failed to provide; (*Id.* ¶¶ 30–52, 124) and (4) hired Dr. Ek for a position for which he was obviously unfit, having either failed to perform a background check or ignored its results. (*Id.* ¶¶ 24–27; *see* Section I, *supra*.) The Amended Complaint meets the pleading standard for willful and wanton misconduct, and the Wexford Defendants' motion to dismiss Count IX should accordingly be denied.

## II.   THE COURT SHOULD DENY THE WEXFORD DEFENDANTS MOTION TO STRIKE, WHICH ATTACKS ALLEGATIONS CENTRAL TO MR. THOMPSON'S CLAIMS.

The Wexford Defendants' motion to strike is little more than a conclusory reiteration of their motion to dismiss. Unable to marshal any relevant legal support, their motion to strike rests entirely upon the conclusion – which as demonstrated above, is plainly mistaken – that Mr. Thompson has no basis for his negligent hiring claim. Their motion fails to even approach the standard demanded by Rule 12(f) and should be denied.

### A.   Legal Standard.

A party moving to strike under Rule 12(f) "bears the burden of demonstrating that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial." *Vakharia v. Little Co. of Mary Hosp. & Health Care Centers*, 2 F. Supp. 2d 1028, 1033 (N.D. Ill. 1998) (citing *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir.1992)). It is a heavy burden – motions to strike are "drastic remedies" and are therefore disfavored. *Id*. A motion to strike must be denied unless "the language in the pleading has no possible relation to the controversy and is clearly prejudicial; this is essentially a relevance inquiry." *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 1006 (N.D. Ill. 2013) (citations and quotation marks omitted); *see also McDowell v. Morgan Stanley & Co., Inc.*, 645 F. Supp. 2d 690, 693 (N.D. Ill. 2009) ("[A] reviewing court ordinarily will not strike a pleading unless the court can confidently conclude that it is prejudicial to the objecting party.") (citations omitted).

The baseline principle is set forth clearly in the unpublished Eastern District of Pennsylvania decision the Wexford Defendants cite in their motion: when "allegations are relevant to the complaint[,] . . . [t]hey are therefore not immaterial," and accordingly must not be stricken. *Lee v. Eddystone Fire & Ambul.*, CV 19-3295, 2019 WL 6038535, at *5 (E.D. Pa. Nov. 13, 2019). Regardless of whether the nature of misconduct alleged in a complaint is offensive or casts

someone in a derogatory light, if it is material to the plaintiff's claim it is not to be stricken. *See Volling*, 999 F. Supp. 2d at 998, 1006–7 (denying motion to strike where plaintiffs' negligent retention claim included allegations of employees "placing . . . feces in the women's bathroom and/or putting it on a spoon and chasing people with it. . . . batteries such as hitting a psychiatric patient with a clipboard or exposing a patient's breasts unnecessarily[,] . . . [and that] paramedics . . . drove the ambulance while intoxicated or while sending text messages).

B.   **Regardless Of Whether Allegations Of Dr. Ek's Alleged Past Misconduct Are Unflattering, They Cannot Be Stricken Under Rule 12(f).**

As set forth in detail above in Section I, the allegations concerning Dr. Ek's past misconduct are material to establishing Dr. Ek's particular unfitness for employment as medical director at Danville – a required element of the cause of action under Illinois law. And because the facts alleged are material, it simply does not matter whether they "embarrass" Dr. Ek or not. (ECF No. 24 at 7.) *See Volling*, 999 F. Supp. at 1006 (where allegations are relevant, they may not be stricken even if they "unquestionably place [a party] in an unflattering light").

None of the arguments advanced by the Wexford Defendants meet the standard for striking allegations in a complaint. They suggest, first, that the allegations must be stricken because – according to nothing more than rank speculation – Mr. Thompson purportedly amended his complaint for the purpose of conducting further discovery into Dr. Ek's past misconduct. (ECF No. 24 at 6.) But not only is Mr. Thompson's motivation to amend his complaint immaterial (and a matter of litigation strategy of which the Wexford Defendants have zero knowledge), the original complaint has been superseded and has no current legal significance. *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998) ("Once an amended pleading is filed . . . . [t]he prior pleading is in effect withdrawn as to all matters not restated in the

amended pleading, and becomes *functus officio*.") (internal citations and quotation marks omitted). In other words, the argument is built upon a nullity.[5]

The Wexford Defendants also repeat the naked factual assertion that Dr. Ek has overcome his addiction, and that his past misconduct must be forgotten because he was permitted to practice medicine in Illinois. (ECF No. 24 at 7.) But again, a Rule 12 motion is not the place for factual argument. *See Fed. Nat. Mortg. Ass'n v. Cobb*, 738 F. Supp. 1220, 1224 (N.D. Ind. 1990) ("In determining whether to grant a motion to strike, the court must treat all well-pleaded facts as admitted and cannot consider matters outside the pleadings.")

Finally, the Wexford Defendants' conclusory statement that Mr. Thompson has no basis for his negligent hiring claim is not merely groundless, as illustrated in Section I above, it is also an impermissible attempt to "backdoor" a Rule 12(b)(6) motion under cover of Rule 12(f). *Siegel v. HSBC Holdings, plc*, 283 F. Supp. 3d 722, 731 (N.D. Ill. 2017); *see also Ehlerding v. Am. Mattress & Upholstery, Inc.*, 208 F.Supp.3d 944, 953 (N.D. Ind. 2016) ("Rule 12(f) is not the proper vehicle to attack the sufficiency of Plaintiff's claims[.]") (citations omitted). Accordingly, the Wexford Defendants' 12(f) motion to strike should be denied.

## CONCLUSION

For the foregoing reasons, this Court should deny the Wexford Defendants' motion to dismiss Counts IV and IX and its motion to strike. Mr. Thompson requests oral argument on Defendants' motion to the extent it would assist the Court in the resolution of the motion to dismiss.

---

[5]Even if this argument held any water, the suggestion that allegations of past misconduct do not relate to the original Complaint is wrong. Wexford's decisions to hire Dr. Ek, to surround him with threadbare staffing, and to exercise no meaningful supervision over him are examples of dangerous deficiencies in Wexford's provision of medical care that Wexford knew, or should have known, invited disastrous health outcomes such as Mr. Thompson's. Accordingly, they support his claim under 42 U.S.C. § 1983 that Wexford violated his right to be free from cruel and unusual punishment (Count II).

Dated: March 2, 2022                   Respectfully submitted,

By: /s/ *Jason M. Bradford*
     Jason M. Bradford
     Brian B. Druchniak
     Jenner & Block LLP
     353 N. Clark Street
     Chicago, IL 60654-3456
     Tel: (312) 222-9350
     Fax: (312) 527-0484

     *Attorneys for Plaintiff Tarrence Thompson*

## CERTIFICATE OF COMPLIANCE

I, Jason M. Bradford, an attorney, hereby certify that the foregoing **Plaintiff's Memorandum of Law in Opposition to Defendants Wexford Health Sources, Inc. and Jonathan Ek's Motion to Strike and Partial Motion to Dismiss** complies with the length limitations set forth in Local Rule 7.1. Inclusive of all headings, footnotes, and quotations, the memorandum totals 6,862 words and 42,736 characters.

Respectfully submitted,

By: /s/ *Jason M. Bradford*
    Jason M. Bradford
    Brian B. Druchniak
    Jenner & Block LLP
    353 N. Clark Street
    Chicago, IL 60654-3456
    Tel: (312) 222-9350
    Fax: (312) 527-0484

    *Attorneys for Plaintiff Tarrence Thompson*